## CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Jane Doe

v.

Virginia Department
of Social Services and
Prince William County
Department of Social Services

March 16, 1992

Case No. (Law) 24002

BY JUDGE FRANK A. HOSS, JR.

In this case, this Court is called upon to review a finding made by the Commissioner of the Virginia Department of Social Services upholding a founded disposition of a complaint of "mental/emotional abuse" by the Plaintiff of her two children.

Plaintiff's assignment of error is two-fold: (1) the Agency made a procedural error which was not harmless; and (2) the record is devoid of substantial evidence to support the Agency's findings.

After reviewing the record in its entirety, the applicable statutes, the briefs filed by the parties, and oral argument made at the hearing held on this matter on February 5, 1992, I am of the opinion that the Plaintiff is correct in both respects.

### Procedural History

After receiving complaints of alleged abuse by the Plaintiff, the Defendants, acting through their agents, initiated an investigation which culminated in a finding of Mental/Emotional Abuse of Plaintiff's son and eldest daughter. A review of the matter by the Agency's director resulted in no change, and the mater was then appealed to the State Department of Social Services with a hearing scheduled and held by a designated Hearing Officer. This officer also upheld the finding of

Mental/Emotional Abuse, and the Plaintiff appealed to this court for review pursuant to § 9–6.14:17 of the Code of Virginia.

### The Procedural Error

Plaintiff complains that error was committed in this matter in that significant information was withheld from her both in violation of her Constitutional Due Process rights and the direct order of the Hearing Officer. In advance of the administrative hearing in this case, a preliminary hearing was held which resulted *inter alia* in a directive from that officer that the Plaintiff be given "all of the information in the agency's record with the exclusion of the name of the complainant." (Preliminary Hearing Tr. page 6.) In the face of this order and in further violation of the Plaintiff's rights as aforesaid, names of certain collateral witnesses, one of whom was a person the Plaintiff eventually called to testify on her behalf, were withheld from Plaintiff. The Plaintiff did not know that such witness had previously made statements to a case worker that were significantly different from those made at the hearing.

Additionally, Plaintiff was given a case summary supposedly made by the investigating case worker. In fact, the summary given Plaintiff's counsel had been edited to not only omit reference to the names of collateral witnesses the Plaintiff was supposed to receive, but also to redact a number of statements made by these witnesses directly challenging the veracity of the Plaintiff's son.

Considering the fact that this entire case revolves around the statements made by the two children to witnesses, the case worker and the Hearing Officer, deliberate elimination of material directly affecting credibility of witnesses cannot be viewed to be harmless error. Counsel for the Defendants attempts to pass off these redactions as merely purging the record of material relating to an *unfounded* complaint by the son to *physical* abuse by the Plaintiff. I find disclosure of such a finding of great relevance in considering the credibility and veracity of the complaints concerning the Mental/Emotional Abuse supposedly occurring at the same time between the same parties.

### Does the Evidence Support the Agency's Finding?

Mental Abuse is defined in the regulations of the Department as follows:

*Mental Abuse*

Mental refers to emotional, intellectual, or psychological functions. The parent or caretaker inflicts or threatens to inflict injury to the mental functioning of the child. *The child may or does demonstrate significant mental difficulty which is caused or perpetuated by a pattern of identifiable behavior by the caretaker.* In the absence of such evidence in a young child, it must be clear that the caregiver clearly exhibits an identifiable pattern of harmful behavior.

*Guidelines*

(1) A child's mental difficulty can only be considered to be the result of mental abuse *when there is [a] described or a demonstrated relationship between caretaker behavior and the child's difficulty . . . .*

(4) Evidence of mental difficulties, after organic causes have been ruled out, include, but are not limited to: *poor school performance*, poor peer relationships, feeding and sleeping problems, lethargy, enuresis, stuttering, runaway behavior, depression, and suicide threats. (Emphasis added.)

A full review of the record in this matter does not support a finding, by clear and convincing evidence, that there was a "pattern of identifiable behavior" that caused any of the mental difficulties supposedly suffered by the children of the Plaintiff. Further, the evidence did not support a finding that there was "described or demonstrated relationship between caretaker behavior and the child's difficulty." What was shown by the evidence was that the daughter was being affected at the time of the investigation by such matters as the pressures of the swim competition in which she was involved, the loss of her long time coach and friend, the suicide threats of her best friend and the loss of some companionship with her, the effects of puberty, and the fact that she had to confront reaching a plateau in her swimming ability that was not readily overcome.

As for the son, he admitted at the hearing that he was not doing well at school, hiding grades and reports from school from his parents, and generally misbehaving for which he was being punished in a manner he did not care for. He admitted that as a result of these things, he wanted his mother to be in trouble.

The record indicates these factors were the causes of the mental difficulties of the children to an infinitely greater degree than the behavior attributed to the Plaintiff.

It is in considering paragraph 4 of the Guidelines that this case is brought into proper focus. The Defendants relied heavily in oral argument before this court and throughout the record upon suicide threats made by the daughter and matricide threats made by the son. These are, of course, proper matters to be considered. However, it is almost comical when one compares the evidence in this case with the remaining suggested findings set forth in paragraph 4 of the Guidelines. The subject daughter, *although blind*, had made only one "B" in her life, the balance of all her grades having been "A"s. She has become a world-class swimmer competing and winning in events held around the world, is a successful gymnast, and has demonstrated none of the traits indicated by the balance of the above list of evidence of mental difficulties. At the time of the initial investigation, the son was doing poorly academically, was a known liar, and hid the results of his grades and school work from his parents. By the time of the hearing before the Hearing Officer, however, he had progressed, under the allegedly abusive hands of his mother, to a position on the Honor Roll in school, had been recommended out of his learning-disabled classes, and was obviously getting his "act together" as he put it. Notwithstanding all of this, the Hearing Officer found that both the son's and daughter's statements indicating that neither had any intention of suicide or matricide were not worthy of belief and chose to accept what had been said earlier, although the officer was not the person to evaluate those earlier statements.

Even though the Defendants rely heavily upon the suicide and matricide threats made by the children to support their finding, it is most telling to note that, at the time these threats were initially made, nothing was done by the department to intervene on the children's behalf. No mental evaluation was accomplished (Defendants complain that the parents would not authorize same; however, steps could have been taken to overcome that if real threats were present), and no therapy was required. Essentially, after making the finding, the Defendants just went away.

This court must confine its review of the Agency's finding of fact to whether "there was substantial evidence in the agency record upon which the agency as the trier of facts could reasonably find them to be

as it did." (Section 9–6.14:17, Code of Virginia.) Such evidence must be considered, however, in the context that the agency's finding must be made upon a *clear and convincing* evidentiary standard. On this basis, and after considering the record as a whole, I find that "reasonable mind[s] would necessarily come to a different conclusion," *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231 (1988), from the conclusion reached by the Defendants. The evidence, at best, reveals a mother who by various means, obviously not acceptable to those who complained and arguably not acceptable to some other people, attempted to, and by *any reasonable standard did*, motivate her children to accomplish higher and better things.

For the foregoing reasons, I find that there was procedural error in this case which was not harmless, and I further find that the evidence does not substantially support a finding by clear and convincing evidence that the Plaintiff mentally or emotionally abused her son or daughter.

Accordingly, I set aside the finding of the Hearing Officer and direct Mr. Wheeler to draw an Order in keeping with the ruling herein [and] the requirements of § 9–6.14:19.